Argued January 20; reversed February 23, 1937

HALSAN *v.* JOHNSON

(65 P. (2d) 661)

Department 2.

584

*A. C. Fulton,* of Astoria (G. C. & A. C. Fulton, of Astoria, on the brief), for appellant.

*F. M. Franciscovich,* of Astoria (Hesse & Franciscovich, of Astoria, on the brief), for respondent.

BAILEY, J. The plaintiff, Wallace Halsan, a minor, by S. J. Halsan, guardian *ad litem,* instituted this action against the defendant, Marie Johnson, to recover damages for personal injuries sustained by plaintiff in a collision between his sled and a truck owned by the defendant. From the order of the circuit court setting aside the judgment entered upon the verdict of the jury in favor of the defendant this appeal is taken.

The facts are substantially as follows: On January 20, 1935, Wallace Halsan, aged thirteen years, five and one-half months, while coasting on a sled down hill on Tenth street in Astoria, collided at the intersection of Tenth and Exchange streets with a one and one-half ton Dodge truck owned by defendant and operated by her son. Snow had been on the ground for a week or more prior to that date and there had been general coasting on many of the Astoria hills, including the one on Tenth street, which at the time of the accident was covered with tracks of sled runners.

Tenth street runs in a northerly and southerly direction, and Exchange street runs in an easterly and westerly direction. The collision occurred at the north-

west corner of the intersection, while defendant's truck was being driven in a westerly direction, after plaintiff entered the intersection from the south. On the southeast corner of the intersection is the Walters apartment house, a three-story building flush with the sidewalk and extending southerly along Tenth street a distance of approximately one hundred feet, and easterly along Exchange street about sixty-five feet.

At the time of the mishap the defendant's truck was being used in delivering milk to customers in the residential section of Astoria, and in addition to the driver carried two young men, who rode on the running board of the truck and assisted in delivering the milk. Immediately prior to the accident the truck had come almost to a stop in front of the Walters apartments, to permit delivery of milk in that building, after which it proceeded westerly along Exchange street in low gear, at the rate of four to six miles an hour.

After the truck had passed the center of the intersection on the northerly side of Exchange street and was near the northwest corner of the intersection, the sled with plaintiff on it, traveling at a speed estimated by some of the witnesses as high as twenty-five miles an hour, passed under the truck behind the front wheels, and plaintiff was struck by one of the rear wheels of the truck, sustaining injuries to his right hip and leg.

According to plaintiff's own testimony, he observed the truck going in a westerly direction while he was approximately fifty feet south of the intersection and from seventy to eighty feet from the point where the collision occurred. He had started coasting at the intersection of Tenth street and Grand avenue, two blocks south of the intersection where the mishap

occurred, and had crossed Franklin avenue before seeing the truck. Between Grand and Franklin avenues the grade of the street is nineteen and one-half per cent, and from the latter avenue to Exchange street there is a twelve per cent grade. Plaintiff testified that the sled was moving too fast to be stopped, and shortly before entering the intersection of Tenth and Exchange streets he steered it sharply to the left, thinking that the truck would turn north on Tenth street and permit him to pass it on the left.

In the complaint the defendant is charged with being careless, reckless and negligent in the following particulars: (1) in permitting the truck to be driven by her son, alleged to have been "physically incapable and disabled" by having lost his right forearm so that he was then unable "to effect a quick emergency stop as the exigency of an emergency" might require; (2) in failing to have one of the two delivery boys who were riding on the running board sit next the driver of the truck in order to operate the emergency brake in case of need; (3) in not maintaining a proper and continuous lookout for boys sliding down Tenth street until after passing the intersection of that street with Exchange street, because of the obstruction of the view to the south by the apartment house; (4) in failing to stop the truck at the east line of Tenth street and in proceeding through the intersection, without first ascertaining whether or not it would be possible to cross said intersection with safety to boys sliding down the hill; (5) in failing to sound a horn or to give other timely warning of the approach of the truck before crossing the intersection; and (6) in driving the truck through the intersection "in a careless and heedless manner in wilful and wanton disregard of the rights and safety

of others including the plaintiff and without due caution and circumspection and in a manner so as to endanger or likely to endanger persons including this plaintiff.''

Two other charges of negligence were struck from the complaint on motion of the defendant. The first of these was that the defendant was guilty of negligence in employing Hiram Johnson, her son, as a chauffeur to operate the milk delivery truck when he was not licensed as a chauffeur, and the second charge was that defendant was careless and negligent in authorizing and permitting her son, who was not a licensed chauffeur, to operate the truck.

As grounds for a new trial the plaintiff specified as erroneous the action of the court (1) in striking from the complaint the two last mentioned charges of negligence; (2) in excluding proffered testimony of certain witnesses to the effect that they had, prior to the accident, coasted down Tenth street through the intersection with Exchange street; (3) in modifying two instructions requested by the plaintiff; (4) in giving two of defendant's requested instructions; and (5) in failing to withdraw from the jury the question of plaintiff's contributory negligence.

■ After the court had granted plaintiff's request for a new trial the defendant filed a motion asking that the court specify the ground on which a new trial had been granted, which motion the court denied. The denial of this motion forms the basis of one of the assignments of error urged by the appellant. When the court grants a new trial on its own motion, it is required in its order to specify the reasons for such action: § 2-807, Oregon Code Sup. 1935. However, when the order granting a new trial is based upon the motion of the unsuccessful litigant there is no such

588

specification or statement required by statute or rule of law. In *Sawyer v. Hawthorne,* 178 Iowa 407 (158 N. W. 665), after the trial court had granted the defendant's motion for a new trial plaintiff moved that the court specify the grounds on which the order was made, which motion the court overruled. The appellate court held:

"Such a ruling is tantamount to saying that the order rested on all the grounds, for it can not be assumed that any court would deny a party all the advantages won in a trial without being willing on request to specify the precise grounds for its action. It is easy for a party to conjure up any number of grounds, tenable or untenable in a motion for new trial, and it would be unfair to litigants to rule thereon generally without indicating what has led the court to declare the proceedings a mistrial and require all to be done over again. So it was said in Loose v. Cooper, 141 Iowa 377, 118 N. W. 406, that 'it is better to set out the grounds of the ruling in the record.' In Turley v. Griffin, 106 Iowa 161, 76 N. W. 660, it was said that 'appellant was not interested in what plaintiff put into his motion, but only in what matters the court considered.' See, also, Hensley v. Davidson, 135 Iowa 106, 112 N. W. 227, 14 Ann. Cas. 62. For these reasons we shall assume that the court in overruling the motion to specify grounds asserted all the grounds enumerated were well taken."

■ The driver of the truck was about twenty years of age and was a licensed motor vehicle driver but had not obtained a chauffeur's license. He was delivering milk for his mother. Whether he was a chauffeur within the meaning of the motor vehicle act it is not necessary here to decide, for the reason that there was no causal connection between the accident and his failure to have a chauffeur's license. This lack on his part was not the proximate cause of plaintiff's injuries. The driver

was of an age at which he could have obtained a chauffeur's license, if required of him in the operation of his mother's truck. There is nothing pleaded or shown which would have rendered it improper for the secretary of state to issue to him such a license, had application therefor been made: *Wilson v. Bittner,* 129 Or. 122 (276 P. 268, 64 A. L. R. 132). See also, in this connection, *Speight v. Simonsen,* 115 Or. 618 (239 P. 542, 43 A. L. R. 1149), and the following annotations: 16 A. L. R. 1117; 35 A. L. R. 68; 54 A. L. R. 381; 58 A. L. R. 533; 61 A. L. R. 1191; 78 A. L. R. 1031; and 87 A. L. R. 1473.

The plaintiff relies upon the decision in *Austin v. Rochester Folding Box Co.,* 111 Misc. 292 (181 N. Y. S. 275), wherein the court denied a motion to strike from the complaint an allegation to the effect that a person who was employed by the defendant to operate the automobile in question was not authorized by law to operate the same. The opinion in that case was rendered by the trial judge in the course of making up the issues in the case. The court did not have before it all the facts as in the instant case, in which it is demonstrated beyond dispute that the failure to have a chauffeur's license had no possible connection with the accident. It was held in the case cited that "the failure to employ a licensed chauffeur is some evidence of negligence, which may be overcome by subsequent evidence showing that, notwithstanding the fact that the chauffeur was not licensed, he was thoroughly competent and not responsible for the collision".

■ The plaintiff asserts that the fact that the driver of the truck had partially lost the use of his right arm was some evidence of negligence on the part of defend-

ant in permitting him to operate the truck without some one by his side to handle the emergency brake in case of necessity. This implication of negligence, however, is not borne out by the facts. The truck was equipped with four-wheel hydraulic brakes operated by a pedal, while the emergency brake affected only the two rear wheels. It was brought to a complete stop within a few feet after passing over the boy's limb. There was no evidence which would in any way sustain the theory of plaintiff that, had the emergency brake been used, the accident could or would have been prevented.

██ We have carefully read all the testimony in the case and have given thorough consideration to the alleged errors assigned in the motion for a new trial. Without discussing each one of such alleged errors, it is sufficient to say that it is our conclusion that the jury arrived at the one and only result that could be sustained by the facts in the case. The record does not contain sufficient evidence from which the jury could have found or inferred that the defendant was guilty of any of the acts of negligence charged against her in the complaint. It was incumbent upon plaintiff to prove that defendant was negligent, not upon the latter to prove that she was free from negligence.

We are of the opinion that the judgment entered by the circuit court in favor of the defendant, based upon the verdict of the jury, is the judgment which should have been rendered, and therefore, under authority of article VII, § 3, of the constitution, the order of the circuit court granting a new trial is set aside and the cause is remanded to that court with instruction to enter judgment for the defendant.

Bean, C. J., and Campbell and Rand, JJ., concur.