70 So.2d 633

**LINDSEY et al. v. BARTON.**

**6 Div. 209.**

Supreme Court of Alabama.

Jan. 14, 1954.

Rehearing Denied March 11, 1954.

Jackson, Rives, Pettus & Peterson, Birmingham, for appellants.

Taylor, Higgins, Windham & Perdue, Roy M. Johnson, Jr., Birmingham, for appellee.

SIMPSON, Justice.

On original submission of this case the appeal was dismissed by this court. Thereafter appellants moved to set aside the judgment of dismissal and for leave to perfect the transcript. We granted this motion upon condition and, the condition being complied with, the case was resubmitted on the merits October 27, 1953. We therefore proceed to a consideration of the appeal on its merits.

This is an action for personal injuries and property damage received by appellee in a collision of his automobile with the truck-

trailer of appellants.. ·Judgment was for the plaintiff in the amount of $10,000; hence the appeal.

· The central question tendered, as we see it, concerns the action of the trial court in refusing to admit evidence proffered by the defendants that while driving his car at the time of the accident the plaintiff did not have a driver's license. Appellants assign and argue this ruling as error to reverse.

Under Title 36, § 59, Code 1940, a driver's license is required of anyone operating a motor vehicle on the highways of this state; § 63 provides for an examination of the driver prior to the issuance of such license and § 69 makes it a misdemeanor to drive a vehicle without a driver's license. The argument is advanced that on the issue of contributory negligence, evidence that the plaintiff, in violation of Title 36, § 59 et seq., did not have a driver's license was admissible. We are aware of the divided authority in other jurisdictions bearing on this question. It is *res nova* with us.

The appellants contend that violation of a statute is negligence per se in Alabama, Watts v. Montgomery Traction Co., 175 Ala. 102, 57 So. 471, 472, and that since the appellee's driving without a license was in violation of Title 36, § 59 et seq., on an issue of contributory negligence such violation is conclusively negligence and evidence thereof should necessarily be admitted and is proper on the question of the competency of the driver.

Mr. Justice Anderson in the Watts v. Montgomery Traction Co. case, supra, cited 29 Cyc. 438 as authority for the rule that "the statute * * ·* violated * * * [in order to be negligence *per se*] must have been enacted for the benefit of the party who seeks to invoke its violation as distinguished from the public generally or a class to whom the ordinance necessarily applies." And in 29 Cyc. 438 there appears the following statement: "It is necessary, however, that the duty imposed be for the benefit of the person injured * * * and where the duty is plainly for the benefit of the *public at large the individual acquires no new rights by virtue of its enactment.*

Whether a liability arising from the breach of a duty prescribed by a statute * * * accrues for the benefit of an individual specially injured thereby, or whether such liability is exclusively of a public character, must depend upon the nature of the duty enjoined and the benefits to be derived from its performance." (Emphasis added.)

Some statutes have been held to have been passed for the benefit of particular individuals only and not for the benefit of the public. In this situation, the breach of the statute is negligence *per se* only if the party invoking such violation is within the class sought to be protected by the statute. Louisville & N. R. Co. v. Murphree, 129· Ala. 432, 29 So. 592·; Central of Georgia R. v. Sturgis, 149 Ala. 573, 43 So. 96.

It would seem that the statute requiring a driver's license imposes a duty for the benefit of the public at large and the individual defendant, therefore, would acquire no new rights by virtue of its enactment, nor would a violation thereof by the plaintiff, although a criminal offense, inure to the benefit of the defendant so as to be pleaded as contributory negligence against the plaintiff in an action for damages arising from an auto collision between them.

Moreover, there was no evidence in this case nor any offer to show evidence by the appellants-defendants tending to prove a causal relationship between the plaintiff's injuries and the plaintiff's alleged violation of the statute in failing ·to have a license. This is equally true of the evidence of the refusal upon application to grant the plaintiff a driver's license. By the weight of authority and the better reasoning as we see it, under the facts here presented, evidence that the driver was not licensed as required by statute is inadmissible unless there is some causal relationship between the injuries and the failure to have a license. Upon like reasoning the rejection of the evidence of the refusal upon application to grant the plaintiff a driver's license was proper. See DeVite v. Connecticut Co., 112 Conn. 670, 151 A. 320; Davis v. Gordon, 183 Md. 129, 36 A.2d 699, 156 A.L.R. 1109 (Evidence that defendant's license had been revoked

before the accident in question improperly admitted.); Dervin v. Frenier, 91 Vt. 398, 100 A. 760; Lindsay v. Cecchi, 3 Boyce 133, 80 A. 523, 35 L.R.A.,N.S., 699; Lutfy v. Lockhart, 37 Ariz. 488, 295 P. 975; Speight v. Simonsen, 115 Or. 618, 239 P. 542, 43 A.L.R. 1149; Mahowald v. Beckrich, 212 Minn. 78, 2 N.W.2d 569; Opple v. Ray, 208 Ind. 540, 195 N.E. 81; Strandt v. Cannon, 29 Cal.App.2d 509, 85 P.2d 160; Ross v. Pennsylvania R. Co., 106 N.J.L. 536, 148 A. 741. Prichard v. Collins, 228 Ky. 635, 15 S.W.2d 497 (All evidence with reference to failure of driver to be licensed wholly immaterial.) See also Huddy, 15–16 Ency. of Automobile Law 364, § 193; McElroy, The Law of Evidence in Alabama, § 41, p. 14; Gregory, "Breach of Criminal Licensing Statutes in Civil Litigation," 36 Corn.L.Q. 622.

We hold, therefore, that the rejection of evidence that the plaintiff had tried and failed to get a driver's license and that he had never had one was proper.

It is next insisted by appellants that the trial court erred in failing to sustain appellants' objection to the hypothetical question propounded to appellee's medical witness: "Doctor, assuming the fact that Mr. Barton works in the mine as a coal loader, loading coal with his hands and arms; and from the examinations of his X-rays, and from looking at his arm here in Court some year after the arm was broken; assuming all those facts, Doctor, with your medical experience, and your examination of him, would you say that Mr. Charlie Barton is permanently injured and permanently disabled?" The witness answered, "Yes, sir."

Appellants cite the case of Equitable Life Assurance Society of United States v. Davis, 231 Ala. 261, 164 So. 86, 87, as sustaining the position. That suit, however, was one for total and permanent disability benefits under a policy of insurance, by the terms of which the insured in order to recover would have had to be so disabled as to be unable to perform any work for compensation. The sole permanent disability was the loss of an arm and the question which was held to be one seeking illegal testimony was " 'whether or not, medically speaking, that man's condition is such that he can do manual labor?' " In holding the inquiry to be improper, the court pointed out that it was common knowledge that a man accustomed to manual labor was not totally unable to engage in any gainful occupation of that class; that the fact elicited was not a matter for expert opinion and that the inquiry invaded the province of the jury.

More to the point and sustaining the correctness of the ruling in the case at bar is the following statement by the court:

"A physician testifying as an expert to matters within the realm of professional knowledge may give his opinion on one's state of health, and the effect of debility, resulting from injury or disease, upon his ability or inability to engage in work of different kinds. * * *"—Equitable Life Assurance Society v. Davis, supra, 231 Ala. 264–265, 164 So. 86.

The ruling in the Davis case with reference to the testimony sought is obviously distinguishable from the instant one. We think the trial court properly allowed this testimony under the rules that a qualified physician familiar with the subject may give his opinion as to the permanency of the injury and whether or not in his opinion the plaintiff was permanently disabled. Life & Casualty Ins. Co. v. Bell, 235 Ala. 548, 180 So. 573; National Life Ins. Co. of America v. Hedgecoth, 16 Ala.App. 272, 77 So. 422; State Realty Co. v. Ligon, 218 Ala. 541, 119 So. 672.

The competency vel non of that testimony aside, however, substantially the same evidence was previously elicited without objection or motion to exclude, resulting, therefore, anyway that prejudicial error may not be predicated on the later admission of substantially the same testimony. Louisville & N. R. Co. v. Young, 168 Ala. 551, 53 So. 213; New Connells-

ville .Coal & Coke Co. v. Kilgore, 162 Ala. 642, 50 So. 205.

■ The appellants also contend that they were entitled to the affirmative charge on the wanton count. We repeat the oft-stated rule that in considering the propriety of the affirmative charge, the evidence is reviewed most favorably to the plaintiff regardless of any view we may have as to its weight, and we must allow such reasonable inferences as the jury were free to draw, not inferences which we may think the more probable. Duke v. Gaines, 224 Ala. 519, 140 So. 600; Hamilton v. Browning, 257 Ala. 72, 57 So.2d 530.

■ A short recital of the evidence will suffice to show the case was properly submitted to the jury on the wanton count: The two vehicles involved in the collision were traveling in opposite directions along a paved highway approximately seventeen feet in width. The appellants' servant was driving the appellants' vehicle, which consisted of a truck and a pole trailer. The pole trailer portion of the vehicle was eighty-four inches in width and was not equipped with clearance lights, as required by § 40 of Title 36, Code 1940, as amended. The truck was being driven at night at approximately fifty miles per hour. The plaintiff's evidence also tended to show that at the moment of the collision he was traveling at, the speed of fifteen miles an hour. The front end of the two vehicles cleared each other; the point of impact was the left front end of the plaintiff's 1936 Ford automobile and the left dual wheels of the appellants' trailer. The jury also could have found that the plaintiff was on his own side of the road and the dual wheels of the trailer were on the wrong side of the road at the time of the collision; and further, that the appellants' truck and trailer had, immediately preceding the accident, traveled twenty-five feet on the plaintiff's side of the road to the point of collision. Lastly, there was some evidence that it took a distance of four or five feet after turning the truck before the back end

of the trailer would be parallel with the wheels on the front end of the truck and the trailer could swerve left or right while the truck remained straight. . This evidence if believed made out a case of wantonness. " * * * a wanton collision does not require a positive intent to bring it about. * * * if A drives his car down the center of the road, and meets B, driving his car well on his side of the road, and A, in violation of the law of the road, refuses to turn to the right, and keeps straight ahead with the view of forcing B still further out on his side for fear of a collision, but B continues in the zone he has the right to be, and thus a collision becomes so imminent that it is too late for A to turn to the right and avoid it, A may be guilty of a wanton wrong. Though he may not intend a collision, if he knowingly and wrongfully brings on a condition of danger, taking a chance on the other fellow giving way to his wrongful course, until too late for preventive effort, such conduct has all the elements of a wanton act." Daniel v. Motes, 228 Ala. 454, 455, 153 So. 727, 728; Newton v. Altman, 227 Ala. 465, 150 So. 698; Belcher Lumber Co. v. Harrell, 252 Ala. 392, 41 So.2d 385. The affirmative charge, therefore, as to the wanton count was properly refused.

■ The excessiveness of the jury's verdict in the amount of $10,000 is next assigned by the appellants as error. The appellee's injuries and damage consisted of the following: He was rendered unconscious for some time; confined to the hospital for sixteen days; he suffered a fracture of the upper one-third of the ulna of his left arm and a comminuted fracture of the olecron process of the left arm; he was operated on twice and as a result thereof he now has a metal plate in his arm; after being released from the hospital he has had clinical treatment. As a result of the injury, appellee cannot touch his shoulder, he has limited motion in turning his hand, he has limited motion in raising his arm and he cannot straighten his arm at the elbow; his arm still pains him much of

the time; the medical witness testified that he is permanently injured; the only occupation he has ever engaged in is that of a coal loader, loading coal with a shovel involving use of his arms; at the time of the accident he was working three to five shifts per week, earning $13.27 per shift; as a result of the accident, the appellee was off from work somewhat over four months and since that time he has not worked regularly. He sustained property damage in the amount of $400. Lastly, the wanton count being properly submitted to the jury, they were authorized to award punitive damages thereunder. Under the circumstances, we cannot say with any degree of certainty that the amount of the verdict was so excessive as to be indicative of prejudice, passion, partiality, or corruption on the part of the jury, so as to authorize any reduction of it here. Alabama Great Southern R. Co. v. Baum, 249 Ala. 442, 31 So.2d 366.

■ Likewise, there was no error in refusing to give charge numbered twenty-four as requested by the appellants. The trial court in its oral charge and other written charges given at the request of the appellants substantially covered the instructions contained in charge twenty-four.

The other assignments of error are manifestly without merit and need no separate treatment, including that one claiming error on the part of the trial court in refusing to grant a new trial on the weight of the evidence.

■ One final proposition must be noticed. The appellants, after the submission of the cause here, filed an ex parte motion to have this court vacate the judgment appealed from on the ground of alleged fraud in its procurement or that this court set aside the submission and issue an appropriate order to the court below requiring that court to "determine the issue of whether or not appellee perpetrated fraud upon the court below in obtaining said judgment." In neither aspect can the motion be sustained.

With respect to the first, it is only necessary to say that appeals are purely statutory and the jurisdiction and power of the court on appeal are controlled by statute. Title 7, § 744 et seq. and § 754; Ex parte Jonas, 186 Ala. 567, 64 So. 960. Pending decision of the appeal, there is no authority for this court to inquire into a claim that the judgment was obtained by fraud when the record on appeal discloses no action on that claim by the trial court with the attendant effort to review such ruling. Therefore, the ex parte motion, together with the supporting statement, is not subject to consideration on this appeal, the court being bound by the record and evidence aliunde or matter dehors the record not being subject to consideration. And after an appeal has been taken, the trial court has no power to entertain a motion for a new trial or rehearing under either the thirty-day statute, Code 1940, Tit. 13, § 119, or the four-month statute, Code 1940, Tit. 7, § 279, except as it may be affected by the specific grant in criminal cases by Title 15, §§ 368 and 382 of the Code.

■ Equally without merit is the second aspect of the motion seeking a mandate to the lower court to inquire into the question of whether or not fraud was practiced on it in the procurement of the judgment. This in effect seeks permission from this court to file a petition in the trial court for a writ of error coram nobis. Such a proceeding cannot be entertained pending decision of the appeal, since the circuit court is without jurisdiction to consider the vacation of its own judgment pending a decision by this court of the appeal therefrom. Brown v. State, 250 Ala. 444, 446, 34 So.2d 518.

It results, therefore, that the appellants' petition must be stricken and it is so ordered.

Petition stricken and judgment affirmed.

LIVINGSTON, C. J., and GOODWYN and CLAYTON, JJ., concur.